UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **COOK INLET BELUGA WHALE**, <br> Cook Inlet, Alaska <br><br> **ALASKA CENTER FOR THE ENVIRONMENT**, a nonprofit corporation <br> 807 G Street, Suite 100 <br> Anchorage, Alaska 99501 <br><br> **CENTER FOR BIOLOGICAL DIVERSITY**, a nonprofit corporation, <br> 1333 N. Oracle Rd. <br> Tucson, AZ 85705 <br><br> **COOK INLETKEEPER**, a nonprofit corporation, <br> 3734 Ben Walters Lane <br> Homer, Alaska 99603 <br><br> **NATURAL RESOURCES DEFENSE COUNCIL**, a nonprofit corporation, <br> 40 West 20th Street <br> New York, NY 10011 <br><br> **NORTH GULF OCEANIC SOCIETY,** a nonprofit corporation <br> 3430 Main St Suite B1 <br> Homer, Alaska 99603 <br><br>    **Plaintiffs,** <br>    v. <br><br> **CARLOS GUTIERREZ,** Secretary of Commerce <br> 1401 Constitution Ave., N.W., Rm 5516 <br> Washington, DC 20230 <br><br> **NATIONAL MARINE FISHERIES SERVICE,** <br> 1315 East-West Highway <br> Silver Springs, MD 20910 <br><br>    **Defendants.** | **Case No:** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMPLAINT FOR DECLARATORY        1
 & INJUNTIVE RELIEF

# I. INTRODUCTION

1. In this civil action for declaratory and injunctive relief, Plaintiffs COOK INLET BELUGA WHALE, CENTER FOR BIOLOGICAL DIVERSITY, COOK INLETKEEPER, NATURAL RESOURCES DEFENSE COUNCIL, NORTH GULF OCEANIC SOCIETY, and ALASKA CENTER FOR THE ENVIRONMENT challenge the failure of Defendants CARLOS GUTIERREZ, Secretary of Commerce, United States Department of Commerce and the NATIONAL MARINE FISHERIES SERVICE (collectively "NMFS") to comply with the non-discretionary provisions of the Endangered Species Act ("ESA"), as amended, 16 U.S.C. §§ 1531-1544 ("ESA") with regard to protecting a critically endangered population of beluga whales.

2. For the past twenty years, the Cook Inlet beluga whale, a genetically unique and geographically isolated population of beluga whales occupying the waters near Anchorage, Alaska, has been the focus of intense conservation concern, having declined from over 1200 animals to fewer than four hundred. Nevertheless, in 2000 NMFS determined that the Cook Inlet beluga whale did not warrant the protections of the ESA. 65 Fed. Reg. 38778 (June 22, 2000). NMFS's conclusion was based on the assumption that once the primary threat to the species was removed (unsustainable harvest), the population would rebound. Id.; see also Cook Inlet Beluga Whale v Daley, 156 F. Supp. 2d 16 (Dist. D.C. 2001).

3. Unfortunately for the Cook Inlet beluga whale, NMFS's expectations of a population rebound proved overly-optimistic. The population failed to recover and instead continued to decline. On April 20, 2006 Plaintiffs submitted a formal petition to NMFS seeking to have the Cook Inlet beluga whale listed as endangered under the ESA. NMFS scientists conducted a status review, concluded that the beluga faced a high risk of extinction, and on April 20, 2007 NMSF published a proposed rule to list the Cook Inlet beluga whale as endangered. See 72 Fed. Reg. 19854 (Apr. 20, 2007).

4. Notwithstanding the fact that the ESA requires, absent narrow circumstances, that NMFS finalize a proposed listing rule within one year of a proposal,

on April 22, 2008 NMFS published a notice asserting that a "substantial disagreement" regarding the population trend of the Cook Inlet beluga whale exists, and that this "disagreement" warranted a six-month extension of the deadline for finalizing the listing rule for the whale. See 73 Fed. Reg. 21578 (Apr. 22, 2008). NMFS's invocation of this limited exception to the statutory deadline for protecting the beluga under the ESA has no basis in science or the law. On April 23, 2008 Plaintiffs submitted a 60-day notice of intent to sue as required by the ESA. This lawsuit follows.

## II. JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) (actions under the ESA); 16 U.S.C. § 1540(g) (ESA citizen suit provision); 5 U.S.C. §§ 701-706 (Administrative Procedure Act ("APA")); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1346 (action against the United States); 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty); and 28 U.S.C. § 2201-02 (power to issue declaratory judgments in cases of actual controversy).

6. Plaintiffs provided NMFS with at least sixty days written notice of the ESA violations alleged herein as required by 16 U.S.C. § 1540(g)(2)(c).

7. Plaintiffs requested that NMFS correct its violations of the ESA and promptly finalize the listing determination for the Cook Inlet beluga whale. NMFS has failed to remedy the alleged violation, and therefore an actual controversy exists within the meaning of 28 U.S.C. § 2201(a).

8. Venue is proper in this court because Defendants reside in this district. 28 U.S.C. § 1391(e).

## III. PARTIES

9. Plaintiff COOK INLET BELUGA WHALE (*Delphinapterus leucas*) is a species in danger of extinction and deserving of the protection of the ESA.

10. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a nonprofit corporation that works through science, law, and policy to secure a future for

all species, great or small, hovering on the brink of extinction. The Center is dedicated to the preservation, protection, and restoration of biodiversity and ecosystems throughout the world. Center members, staff, and board members include people with aesthetic, professional, recreational, spiritual, educational, scientific, moral, and conservation interests in the beluga whale that is the subject of this Complaint. The Center has over 40,000 members, including those who have viewed, photographed, and otherwise appreciated the Cook Inlet beluga whales, and who intend to enjoy the whales and their habitat in the future. The Center's members use the habitat of the Cook Inlet beluga whale for wildlife observation, research, nature photography, aesthetic enjoyment, recreational, educational, and other activities.

11.    Plaintiff COOK INLETKEEPER is a private nonprofit organization dedicated to protecting the vast Cook Inlet watershed and the life it sustains. Since its inception in 1995, Cook Inletkeeper has become a leading advocate for watershed-based protections in the rich but threatened streams, lakes and estuaries of the Cook Inlet watershed. This includes advocating for the conservation of the Cook Inlet beluga whale.

12.    Plaintiff NATURAL RESOURCES DEFENSE COUNCIL ("NRDC") is a non-profit environmental membership organization with more than 650,000 members and more than 600,000 "online activists" throughout the United States. With its nationwide membership and a staff of lawyers, scientists, and other environmental specialists, it plays a leading role on a diverse range of land and wildlife management and resource development issues throughout the United States. NRDC has long been active in Alaska environmental matters, including efforts to protect the Cook Inlet beluga whale.

13.    Plaintiff NORTH GULF OCEANIC SOCIETY is a federally recognized Alaskan non-profit research and education group whose members are active researchers and educators. The Society's focus is on marine bird and marine mammal research, but in recent years it has focused primarily on cetaceans. The Society maintains long-term life history and population studies on both humpback whales and killer whales from

Southeast Alaska to the Aleutian Islands, and presents the results and analysis of its work at scientific conferences, in schools, and to various user groups. The Society also trains tour boat operators in proper whale watching techniques, and takes out groups of students to give the students hands on experience in field research.

14. Plaintiff ALASKA CENTER FOR THE ENVIRONMENT is an Alaska non-profit environmental advocacy and education corporation that is dedicated to the conservation of Alaska's ecosystems. ACE has approximately 7,000 members.

15. All Plaintiffs petitioned, on their own behalf and on behalf of their members, that NMFS list the Cook Inlet beluga whale as endangered under the ESA.

16. Plaintiffs' members live adjacent to, travel to, and recreate in the habitats of, and observe or attempt to observe, Cook Inlet beluga whales. Plaintiffs' members, have concrete plans to continue to travel to and recreate in the habitats of, and observe or attempt to observe, this species. Moreover, to ensure that the Cook Inlet beluga whale continues to exist in its natural habitat, the Plaintiffs, their members, and staff have worked and plan to continue to work to protect and preserve the habitat necessary for survival and recovery of this species. Therefore, not only do the Plaintiffs' members and staff have strong aesthetic, recreational, moral and spiritual interests in the Cook Inlet beluga whale, they also have strong professional, conservation, education, and scientific interests in them as well.

17. Plaintiffs' members derive substantial scientific, educational, recreational, and aesthetic benefits from the Cook Inlet beluga whale's continued existence in the wild. Plaintiffs have a long-standing interest in conserving imperiled species, including diligent efforts to protect the Cook Inlet beluga whale and the habitat upon which it depends. Plaintiffs bring this suit on their own behalf and on behalf of their adversely affected members and staff.

18. NMFS's failure to issue the final listing determination for the Cook Inlet beluga whale deprives Plaintiffs and their members of legally required protective

measures to conserve and promote the recovery of this species. The recreational, aesthetic, conservation, educational, and scientific interests of Plaintiffs, their members, and staff have been, are being, and unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by NMFS' failure to protect the Cook Inlet beluga whale. The interests of the Plaintiffs' members and the organizations are thus directly and adversely affected by NMFS's unlawful actions.

19. The ESA protections that NMFS continues to withhold would provide the Cook Inlet beluga whale significant benefits: the requirement that federal agencies "insure" that their actions do not "jeopardize the continued existence of any endangered species or threatened species;" the protection of critical habitat; regulations that make it illegal for any person subject to the jurisdiction of the United States to "take", import or export, deliver, receive, carry, transport, or ship in interstate or foreign commerce in the course of commercial activity, or sell or offer for sale in interstate or foreign commerce any endangered wildlife species; increased management and a recovery plan; more money for conservation efforts and the greater recognition/increased public awareness that comes with being listed under the ESA.

20. These increased conservation benefits that would result from the ESA listing that NMFS continues to withhold would help the Cook Inlet beluga whale counteract the various threats it faces and improve recovery efforts. As a result, the Plaintiffs, their members, and staff could continue to observe/attempt to observe the species in its natural habitat; could continue professional, conservation, scientific, and educational efforts on behalf of the species; and derive spiritual, aesthetic, recreation, professional and moral benefit from the continued existence of the species.

21. In sum, unless this Court grants the requested relief and orders NMFS to promptly make and publish the final listing determination for the Cook Inlet beluga whale, ESA benefits will not accrue for this species, and the aesthetic, recreational, educational, professional, scientific, spiritual, moral, and conservation interests of the

Plaintiffs, their members and staff and will continue to be adversely affected. The injuries to Plaintiffs, their members and staff would be redressed by declaratory and injunctive relief compelling NMFS to issue the required final listing determination for the Cook Inlet beluga whale. Plaintiffs have no adequate remedy at law.

22. Defendant CARLOS M. GUTIERREZ is the Secretary of Commerce, and is sued in his official capacity. With regard to the Cook Inlet beluga whale, the Secretary of Commerce is the federal official with the ultimate responsibility for the administration and implementation of the ESA, including its final listing determinations. Secretary Gutierrez has the authority and ability to remedy the harm inflicted by Defendants' actions and inactions.

23. Defendant NATIONAL MARINE FISHERIES SERVICE is the federal agency within the Department of Commerce authorized and required by law to protect and manage the marine resources of the United States, including enforcing the ESA. It published the proposed rule listing the Cook Inlet beluga whale as endangered under the ESA, and unlawfully invoked the six-month delay of the final listing determination. It has the authority and ability to remedy the harm inflicted by Defendants' actions and inactions.

## IV. STATUTORY BACKGROUND

**The Endangered Species Act**

24. The ESA is a federal statute enacted to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). The ESA "is the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Authority v. Hill, 437 U.S. 153, 180 (1978). The Supreme Court's review of the ESA's "language, history, and structure" convinced the Court "beyond a doubt" that "Congress intended endangered species to be afforded the highest of priorities." Id. at 174. As the Court found, "the plain intent of

Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." Id. at 184.

25.     To achieve these objectives, NMFS is required to protect such imperiled species by listing them as either "threatened" or "endangered" if they are facing extinction due to any one, or any combination of, the following factors:
> (A)   the present or threatened destruction, modification, or curtailment of its habitat or range
> (B)   over-utilization for commercial, recreational, scientific, or educational purposes;
> (C)   disease or predation;
> (D)   the inadequacy of existing regulatory mechanisms; or
> (E)   other natural or manmade factors affecting its continued existence.

ESA § 4(a)(1), 16 U.S.C. § 1533(a)(1).

26.     A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." ESA § 3(6), 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." ESA § 3(20), 16 U.S.C. § 1532(20).

27.     A species receives mandatory substantive protections under the ESA if, and only if, it is formally listed as endangered or threatened. See 50 C.F.R. § 402.12(d). Thus, the listing process is the essential first step in the ESA's system of species protection and recovery.

28.     Any interested person can begin the listing process by filing a petition to list a species.   ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a)(2006).

29.     Upon receipt of a petition to list a species, NMFS has 90 days to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1). If the 90-day finding is positive, NMFS must promptly publish it in the Federal Register and commence a "status review" of the species. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A).

30. After issuing a positive 90-day finding, the NMFS has 12 months from the date that it received the petition to make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but precluded. ESA § 4(b)(3)(B), 16 U.S.C. § 1533(b)(3)(B). When NMFS finds that listing of a species is warranted, it must publish a proposed rule to list the species as endangered or threatened in the Federal Register. ESA § 4(b)(5), 16 U.S.C. § 1533(b)(5).

31. Within one year of the publication of a proposed rule to list a species, NMFS must make a final decision on the proposal. ESA § 4(b)(6)(A), 16 U.S.C. § 1533(b)(6)(A). In limited circumstances, the ESA allows a six-month delay in making a final listing determination. Specifically, the ESA states:

> If the Secretary finds … that there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned, the Secretary may extend the one-year period…for not more than six months for purposes of soliciting additional data.

16 U.S.C. § 1533(b)(6)(B)(i).

32. Until the listing determination is finalized, a species remains without the ESA's legal protections. Protection under the ESA provides important benefits to the conservation and recovery of listed species. The ESA requires that NMFS designate "critical habitat" concurrently with listing a species. ESA § 4, 16 U.S.C. § 1533.

33. Moreover, section 7 of the ESA requires that "[e]ach federal agency shall . . . insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2).

34. Finally, the ESA establishes general prohibitions that apply to all endangered wildlife. These protections make it illegal for any person subject to the jurisdiction of the United States to "take" (includes harass, harm, pursue, hunt, shoot,

wound, kill, trap, capture, or to attempt any of these); import or export; deliver, receive, carry, transport, or ship in interstate or foreign commerce in the course of commercial activity; or sell or offer for sale in interstate or foreign commerce any endangered wildlife species.  It also is illegal to possess, sell, deliver, carry, transport, or ship any such wildlife that has been taken in violation of the ESA.  ESA § 9, 16 U.S.C. § 1538.

35.     Each of these ESA protections and benefits are currently unavailable to the Cook Inlet beluga whale because only those species formally listed receive such protections. See 50 C.F.R. § 402.12(d).

36.     To ensure all decisions related to marine mammals are made on the basis of the best scientific information, in Section 202 of the Marine Mammal Protection Act of 1972, Congress established the United States Marine Mammal Commission and charged it to make recommendations to NMFS on matters related to marine mammals. Any deviation from the Marine Mammal Commission's recommendations must be explained in detail.  16 U.S.C. § 1402(d).

## V. FACTUAL BACKGROUND

**A. The Cook Inlet Beluga Whale Is Among the Most Endangered Whales in the World**

37.     Found in arctic and subarctic waters, beluga whales are small toothed whales that have a distinctive white coloring. Cook Inlet beluga whales are a distinct population segment that resides further south than most other beluga whale populations. The beluga whales found in the Cook Inlet do not migrate and are genetically isolated from other beluga populations.

38.     The range of the Cook Inlet beluga whales has contracted considerably since the 1970s.  Although the whales were once distributed over a very large area of the Cook Inlet now they occur primarily in the upper Cook Inlet near Anchorage, Alaska. Now, beluga whales rarely use the middle and lower areas of the Cook Inlet.

39.     The Cook Inlet beluga whale faces severe threats to its habitat. Ongoing and proposed developments in the Cook Inlet threatens the whale's habitat, including oil

and gas exploration and production, port expansion projects, and other industrial activities. Noise pollution resulting from development activities and vessel traffic may also cause more direct injuries to beluga whales. Anthropogenic noise can cause strandings, hearing injuries, avoidance behavior, stress, and impacts to prey availability. Other forms of pollution, including sewage and contaminants, also pose a threat of disease, injury, and mortality to the beluga whale. The Cook Inlet beluga whale is also at risk from entanglement in fishing gear, disease, predation, and the ecological consequences of global warming.

40. In the past, overharvest was the primary factor that placed the Cook Inlet beluga whale at risk of extinction; overharvest reduced the population from well over a thousand animals to fewer than 400. Despite the existence of limits on the harvest for nearly a decade, however, the beluga population is not growing as expected. At present, existing regulatory measures are insufficient to prevent the extinction of this population.

41. The Cook Inlet beluga whales are in danger of extinction. In just four years, between 1994 and 1998, the population declined by 50 percent. From 1994 to 2007, the rate of decline has been -3.9 percent per year. Using the most recent available data, NMFS's April 2008 status review included a population viability analysis which concluded that:

> Taken as a whole, these modeling results indicate clearly that it is likely that the Cook Inlet beluga population will continue to decline or go extinct over the next 300 years unless factors determining its growth and survival are altered in its favor.

Hobbs, R.C., et al., 2008 Status Review and Extinction Risk Assessment of the Cook Inlet Belugas (*Delphinapterus leucas*) (Apr. 2008), at 91.

### B. Procedural History

42. The Cook Inlet beluga whale's journey toward ESA listing has been long and frequently interrupted. In 1988, the Cook Inlet beluga whale became a candidate species for listing under the ESA, receiving no formal protections but affording some monitoring of its status. See 53 Fed. Reg. 33516 (Aug. 31, 1988) ("Endangered and

Threatened Wildlife and Plants; Identification of Marie Vertebrate and Invertebrate Candidate Species for Listing under the Endangered Species Act"). In 1999, NMFS received a petition to list the Cook Inlet beluga whale as endangered under the ESA. After a status review, NMFS determined that listing was not warranted. 65 Fed. Reg. 38778 (June 22, 2000).

43. In 2006, NMFS initiated a new status review and concluded that the Cook Inlet beluga whale was likely to continue to decline or go extinct over the next 300 years based on the current trajectory, and that hunting restrictions had not resulted in anticipated population growth.

44. On April 20, 2006, NMFS received a petition to list the Cook Inlet beluga whale as endangered under the ESA, and later made a positive 90-day finding. 71 Fed. Reg. 44614 (Aug. 7, 2006). Exactly one year after the petition, NMFS issued a proposed rule to list the Cook Inlet beluga whale as an endangered species based on an updated status review. 72 Fed. Reg. 19854 (April 20, 2007).

45. Rather than issuing a final listing rule, on April 22, 2008, NMFS published a notice invoking a six-month extension for the final listing determination citing a "substantial disagreement" in the science. 73 Fed. Reg. 21578 (Apr. 22, 2008); 16 U.S.C. § 1533(b)(6)(B)(i). The disagreement highlighted by NMFS was whether there is a positive trend in the population growth of the Cook Inlet beluga because of a slightly higher count in the 2007 aerial survey. Id.

46. However, just days prior to the notice invoking the extension, in its 2008 status review, NMFS concluded that the Cook Inlet beluga whale was still on the path toward extinction. Hobbs, R.C., et al., 2008 Status Review and Extinction Risk Assessment of the Cook Inlet Belugas (*Delphinapterus leucas*) (Apr. 2008), at 92. The 2008 status review found a 39 percent probability of the whale's extinction in 100 years and 86 percent probability of extinction in 300 years. Id. at 90.

47. Notably, the 2008 status review included the data from the 2007 aerial survey and a peer review by a panel of independent experts. Id. at 8. Rather than

Case 1:08-cv-01129-JR   Document 1   Filed 06/30/2008   Page 13 of 15

showing a positive trend in the population growth, the existing evidence strongly indicates that the population is not recovering and is likely declining. Further survey data cannot reasonably be expected to change this fact. Thus, there is no legally or scientifically supportable basis for NMFS's invocation of a 6-month extension of time to make the listing decision. The best available science clearly shows that the Cook Inlet beluga whale is at high risk of extinction and in need of the protection of the ESA immediately.

48.     On May 1, 2008 the Marine Mammal Commission sent a letter to NMFS stating that "the suggested disagreement over the population trend of the Cook Inlet beluga is not scientifically credible." The Marine Mammal Commission stated that NMFS's "decision to delay its listing decision is unjustified and inconsistent with the intent of the Endangered Species Act." The Marine Mammal Commission recommended that NMFS "withdraw the six-month extension for determining whether to list the Cook Inlet beluga whale population, proceed immediately with an affirmative listing decision under the Endangered Species Act, and initiate all actions that flow from such a listing to conserve this population and promote its recovery."

49.     Absent the extension, the final determination for the Cook Inlet beluga whale was due on April 20, 2008. At this time, NMFS has not yet published a final listing determination for the beluga whale.

50.     The Cook Inlet beluga whale will not receive the protections it needs and deserves under the ESA until NMFS completes the ESA listing process.

### VI. CLAIM FOR RELIEF
### (Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(6), for Failure to Make a Final Listing Determination)

51.     Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

52.     NMFS's determination to invoke a six-month extension for making a final listing determination for the Cook Inlet beluga whale does not comply with requirements of the ESA that such determinations be made solely on the basis of the best available

COMPLAINT FOR DECLARATORY
& INJUNTIVE RELIEF                          13

science. 16 U.S.C. § 1533(b)(6)(B)(i). This determination is also an arbitrary and capricious agency action in violation of the APA, 5 U.S.C. § 706.

53. NMFS's failure to make a final listing determination for the Cook Inlet beluga whale within one year of the proposed rule to list the species as endangered under the ESA violates the ESA and its implementing regulations. 16 U.S.C. § 1533(b)(6); § 1540(g). NMFS's failure to perform its mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, NMFS's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

## VII. PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request that the Court grant the following relief.

1. Declare that NMFS is in violation of the non-discretionary duties imposed by 16 U.S.C. § 1533(b)(6) of the ESA for failing to make a final listing determination within one year of proposed rule to list the Cook Inlet Beluga whale under the ESA;

2. Declare that NMFS is in violation of the non-discretionary duties imposed by 16 U.S.C. § 1533(b)(6) of the ESA for failing to use the best available science in determining that there was a "substantial disagreement" warranting a 6-month extension in the final listing determination for the Cook Inlet beluga whale;

3. Issue permanent injunctive relief compelling NMFS to make and publish in the Federal Register a final listing determination for the Cook Inlet beluga whale under the ESA by a date certain;

4. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees; and

5. Grant Plaintiffs such other relief as the Court deems just and proper.

DATED: June 30, 2008

                        Respectfully submitted,

                        _____

                        William J. Snape, III (DC Bar # 455266)
                        CENTER FOR BIOLOGICAL DIVERSITY
                        5268 Watson Street, NW
                        Washington, DC 20016
                        Ph: 202-536-9351
                        Fax: 415-436-9683
                        billsnape@earthlink.net

                        Brendan R. Cummings (CA Bar # 193952)
                        PO Box 549
                        Joshua Tree, CA 92252
                        Ph: 760-366-2232x304
                        Fax: 760-366-2669
                        bcummings@biologicaldiversity.org

                        Michael J. Frank (AK Bar #7410076)
                        Victoria Clark (AK Bar #0401001)
                        Trustees for Alaska
                        1026 W. 4th Ave., Suite 200
                        Anchorage, Alaska 99501
                        Ph: 907-276-4244 ext. 116
                        Fax:  907-276-7110
                        mfrank@trustees.org
                        vclark@trusteees.org

                        Attorneys for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
COOK INLET BELUGA WHALE, ALASKA CENTER FOR THE ENVIRONMENT, CENTER FOR BIOLOGICAL DIVERSITY, COOK INLETKEEPER, NATURAL RESOURCES DEFENSE COUNCIL, NORTH GULF OCEANIC SOCIETY

## DEFENDANTS
CARLOS GUTIERREZ, Secretary of Commerce, NATIONAL MARINE FISHERIES SERVICE

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF — Anchorage
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William J. Snape, III (DC Bar # 455266)
CENTER FOR BIOLOGICAL DIVERSITY
5268 Watson Street, NW
Washington, DC 20016
Ph: 202-536-9351
Fax: 415-436-9683
billsnape@earthlink.net

Case: 1:08-cv-01129
Assigned To : Robertson, James
Assign. Date : 6/30/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 3 Federal Question (U.S. Government Not a Party)
- (X) 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### A. Antitrust
- 410 Antitrust

### B. Personal Injury/Malpractice
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Medical Malpractice
- 365 Product Liability
- 368 Asbestos Product Liability

### (X) C. Administrative Agency Review
- 151 Medicare Act

Social Security:
- 861 HIA ((1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g)
- 864 SSID Title XVI
- 865 RSI (405(g)

Other Statutes
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- (X) 893 Environmental Matters
- 894 Energy Allocation Act
- 890 Other Statutory Actions (If Administrative Agency is Involved)

### D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### E. General Civil (Other) OR F. Pro Se General Civil

**Real Property**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent, Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**Personal Property**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**Bankruptcy**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

**Property Rights**
- 820 Copyrights
- 830 Patent
- 840 Trademark

**Federal Tax Suits**
- 870 Taxes (US plaintiff or defendant)
- 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- 610 Agriculture
- 620 Other Food &Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 RR & Truck
- 650 Airline Regs
- 660 Occupational Safety/Health
- 690 Other

**Other Statutes**
- 400 State Reapportionment
- 430 Banks & Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation

- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Satellite TV
- 810 Selective Service
- 850 Securities/Commodities/Exchange
- 875 Customer Challenge 12 USC 3410
- 900 Appeal of fee determination under equal access to Justice
- 950 Constitutionality of State Statutes
- 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(4)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Violation of the Endangered Species Act, 16 U.S.C. § 1533, for failure to list Cook Inlet Beluga Whale as endangered.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:    YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE 6-30-08    SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.